IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In the matter of | ) | CHAPTER 7 |
| | ) | |
| RICHARD RYAN DEMPSEY and | ) | Case No. 08 B 33951 |
| EILEEN M. DEMPSEY, | ) | |
| | ) | |
| Debtors, | ) | JUDGE JACQUELINE P. COX |
| _____ | ) | |
| | ) | |
| GEORGE J. MCCARTHY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09 A 489 |
| | ) | |
| RICHARD R. DEMPSEY, and | ) | |
| EILEEN M. DEMPSEY | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S ANSWER TO COMPLAINT
TO DETERMINE DISCHARGEABILITY OF DEBT
UNDER 11 U.S.C. § 727(a) and 11 U.S.C. § 523(a)(18)**

NOW COME the Defendants Richard R. Dempsey and Eileen M. Dempsey ("Defendants" or "Debtors"), by and through their attorneys, and answering the Complaint filed by Plaintiff George J. McCarthy, state as follows:

1. This adversary proceeding arises out of the Defendants' Chapter 7 Case No.08 B 33951.

**ANSWER:** Admit

2. Richard Dempsey and Eileen Dempsey are individuals that reside at 2626 North Lakeview, Chicago, Illinois.

**ANSWER:** Admit

3. George McCarthy is an individual that resides in Greenville, South Carolina.

**ANSWER:** Defendants have insufficient information upon which to determine the truth or falsity of the allegation and therefore deny the same.

    4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(l).

**ANSWER:** Admit

    5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

**ANSWER:** Admit

## COUNT I - 11 U.S.C. § 727(a)

    1-5.    George McCarthy realleges and incorporates by reference Paragraphs 1-5.

**ANSWER:** Defendants incorporate by reference their answers to ¶¶ 1-5.

    6.    Richard Dempsey and Eileen Dempsey filed a verified Statement of Financial Affairs. See Attached Exhibit A.

**ANSWER:** Admit

    7.    In that Statement, Richard Dempsey and Eileen Dempsey affirmed that they received no income from employment or from the operation of business in the two years immediately preceding the filing the bankruptcy petition. Exhibit A, No. 1.

**ANSWER:** Admit.

    8.    Richard Dempsey and Eileen Dempsey further stated under oath that their only income in the two years preceding the bankruptcy filing was from social security and from oil royalties totaling approximately $17,000.00 per year. Exhibit A, No. 2.

**ANSWER:** Admit. Other funds received during the relevant time were loans, not income, pursuant to a Board Resolution dated January 5, 2004, attached hereto as **Exhibit A**, and as set

2

forth in Amended Schedule F.

9. Richard Dempsey and Eileen Dempsey filed Schedule I — Current Income of Individual Debtor(s). See Attached Exhibit B.

**ANSWER:** Admit

10. Richard Dempsey and Eileen Dempsey declared under penalties of perjury that their average monthly income was $1,355.00. Exhibit B, No. 16.

**ANSWER:** Admit.

11. George McCarthy was granted leave to examine Richard Dempsey and Eileen Dempsey pursuant to Federal Rule of Bankruptcy Procedure 2004.

**ANSWER:** Admit

12. The 2004 examinations of Richard Dempsey and Eileen Dempsey were taken on May 7, 2009.

**ANSWER:** Admit

13. Richard Dempsey is, and at all relevant times has been, the sole owner of all shares of Demhoff Corporation. He is also a director and officer of the entity.

**ANSWER:** Admit

14. Demhoff Corporation is an Illinois corporation that Richard Dempsey used to trade millions of dollars in the commodities market, and used to hold assets such as real estate, autos and other property.

**ANSWER:** Admit

15. During the 2004 examination, Richard Dempsey admitted that he personally received between $200,000.00 and $300,000.00 from Demhoff Corporation in 2008. See 2004 Examination transcript of Richard Dempsey dated May 7, 2009 and attached hereto as Exhibit C,

pages 9-10.

**ANSWER:** Admit. Further answering, the funds were used in part to pay Demhoff's liabilities, and in part to pay personal obligations. The funds used for personal obligations were taken as loans owed to Demhoff. See **Exhibit A** and Amended Schedule F. At the 2004 examination, Mr. Dempsey over-estimated the amount received from Demhoff in 2008, confusing it with prior years.

16. Richard Dempsey admitted that he personally received between $100,000.00 and $150,000.00 from Demhoff in 2007. Exhibit C, page 11.

**ANSWER:** Admit. Further answering, the funds were used in part to pay Demhoff's liabilities, and in part to pay personal obligations. The funds used for personal obligations were taken as loans owed to Demhoff. See **Exhibit A** and Amended Schedule F.

17. Richard Dempsey admitted that he personally received between $100,000.00 and $150,000.00 from Demhoff in 2006. Exhibit C, page 12.

**ANSWER:** Admit. Further answering, the funds were used in part to pay Demhoff's liabilities, and in part to pay personal obligations. The funds used for personal obligations were taken as loans owed to Demhoff. See **Exhibit A** and Amended Schedule F. At the 2004 examination, Mr. Dempsey over-estimated the amount received from Demhoff in 2006, confusing it with other years.

18. Richard Dempsey further admitted that Eileen Dempsey received at least $50,000.00 per year from Demhoff Corporation from 2006 through the date of the bankruptcy filing. Exhibit C, page 12-14.

**ANSWER:** Admit. Further answering, any funds deposited in Eileen Dempsey's account were for convenience, and were used in large part to pay Demhoff's liabilities, and, in much

4

lesser degree, to pay personal obligations of Richard Dempsey.  The funds used to pay personal liabilities of Richard Dempsey were taken as loans from Demhoff to Richard and Eileen Dempsey.  See **Exhibit A** and Amended Schedule F.

19. Between 2006 and 2008, the Debtors admitted that they personally received between $550,000.00 and $750,000.00 from Demhoff Corporation as income and for payment of personal expenses.

**ANSWER:**   Deny.  See responses to ¶¶15-18 above.

20. Despite earning on average at least $250,000.00 per year, the Debtors represented under penalties of perjury that they were only making approximately $17,000.00 per year from 2006 to present. Exhibit B, No. 16.

**ANSWER:**   Deny.

21. The debtors confirmed that the money received from Demhoff Corporation was deposited into their personal accounts.

**ANSWER:**   Admit. Further answering, the funds received were used in part to pay Demhoff Corporation's liabilities and in part to pay personal obligations of Richard Dempsey.  The funds used to pay personal obligations of Richard Dempsey were taken as loans to Richard Dempsey. See **Exhibit A** and Amended Schedule F.

22. The debtors admitted that they are receiving income from Demhoff Corporation even after the bankruptcy filing including the receipt of $23,780.59 in January 2009. Exhibit C, page 32.

**ANSWER:**   Move to strike as irrelevant.  Without waiving such motion, deny.

23. Despite receiving up to $750,000.00 in the last two years (and on information and belief the amounts received by the debtors exceeds this amount), none of this income was reported on the Statement of Financial Affairs or on Schedules I and J of the Debtors'

5

bankruptcy filings.

**ANSWER:**   Deny. See responses to ¶¶15-18 above.

24.   Richard Dempsey and Eileen Dempsey falsely and fraudulently stated that they are only making $1,355.00 a month in income and that they received no income from any source other than social security or oil royalties in the last two years.

**ANSWER:**   Object to multiple allegations. Without waiving the objection, deny.

25.   Richard Dempsey represented on the Statement of Financial Affairs that no transfers of assets were made in the last two years. Exhibit A, No. 10.

**ANSWER:**   Admit. Further answering, at the 2004 examination Richard Dempsey, through an oversight that was unintentional and has been corrected on the Amended SOFA, erroneously believed that the relevant transfer had taken place prior to December of 2006. Richard Dempsey transferred his 50% interest in Linda Lou's Inc., to Linda Ellison for elimination of his individual debt of approximately $40,000.00 owing to Linda Ellison.

26.   Richard Dempsey admitted that at the 2004 Examination that this statement was false.

**ANSWER:**   Admit. Further answering, when he filled out the SOFA, he mistakenly thought the transfer mentioned above had taken place before December 2006.

27.   Richard Dempsey transferred his 50% common stock ownership interest in Linda Lou's 119, Inc. in December 2007. Exhibit C, page 21.

**ANSWER:**   Admit.  See answer to question 25 above.

28.   According to Richard Dempsey, the shares in Linda Lou's 199, Inc. were exchanged in return for the elimination in $40,000.00 in debt. Exhibit C. page 22.

**ANSWER:**   Admit.  See answer to question 25 above.

6

29. The transfer of the Linda Lou's 199, Inc. shares was not disclosed on the Statement of Financial Affairs.

**ANSWER:** Admit. See answer to question 25 above.

30. On or about December 2, 2006 Demhoff sold its interest in real estate in Woodford County, Illinois for $2,000,000.00. See attached Exhibit D. The property sold is legally described as:

> NW ¼ & W 'A SW SECTION 10, PARTRIDGE TOWNSHIP, WOODFORD COUNTY, ILLINOIS.

**ANSWER:** Deny. The sale was for $1,850,000.

31. As part of the sale, Demhoff retained six membership interests in the purchaser valued at $923,078.00. The entity purchasing the land was The Greenhead Hunting Club, LLC.

**ANSWER:** Admit. However, Demhoff sold 3 membership interests but, according to the agreement with the purchaser, the other 3 membership interests were automatically returned to Greenhead when Demhoff was unable to sell the remaining interests within two (2) years.

32. On information and belief, money received at closing was deposited into Demhoff Corporation accounts. Richard Dempsey then withdrew the amounts obtained for his personal use.

**ANSWER:** Defendants object to multiple allegations. Without waiving the objection, Defendants state that they have insufficient information as to the truth of falsity of the allegations and therefore deny them. Further answering, Demhoff received at closing $639.34 (cash to seller"), according to the closing statement of the transaction

33. Three of the six membership interests in The Greenhead Hunting Club, LLC were sold for $153,000.00 in 2007. Exhibit C, page 74-75.

7

**ANSWER:**    Deny. Each of the 3 membership interests sold for $153,000.

34.    Money from one of the membership sales was deposited into Richard Dempsey's personal account. Exhibit C, page 76.

**ANSWER:**    Admit

35.    On information and belief, the remaining money from the membership sales were deposited into Demhoff Corporation accounts and then personally withdrawn by Richard Dempsey as income for his personal use.

**ANSWER:**    Admit in part; any funds withdrawn by Richard Dempsey were taken as loans. See **Exhibit A** and Amended Schedule F.

36.    None of the amounts received by Richard Dempsey from Demhoff Corporation were reported in any of his bankruptcy filings.

**ANSWER:**    Admit. See **Exhibit A** and Amended Schedule F.

37.    Richard Dempsey and Eileen Dempsey reported that Demhoff Corporation was valued as $0 on Schedule C of bankruptcy filing. A copy of that Schedule is attached hereto as Exhibit E.

**ANSWER:**    Admit.  The evaluation was based on the fact that Demhoff's liabilities, including an estimated tax liability of $967,000.00, far outweighed all of Demhoff's assets.

38.    Demhoff Corporation had value because there was money in its bank accounts, as evidenced by Richard Dempsey's withdrawal of over $23,000.00 in January 2009, and by the fact that Richard Dempsey and Eileen Dempsey continued to earn money through Demhoff Corporation before siphoning money from the corporate accounts to their personal accounts. Exhibit C, page 32.

**ANSWER:**    Object to multiple allegations. Without waiving the objection, deny.  Further

answering, Debtors state that the corporate stock had no discernable value because the total liabilities (approximately $1,475,000.00) were greater than the total realizable assets ($238.000). Further, Debtors did not continue to earn money through Demhoff after 2007, when it had a trading account. Finally, Debtor Richard Dempsey surrendered his stock in Demhoff to the Trustee, who was unable to sell the stock. The Trustee filed a no asset report on August 31, 2009. See Docket Entry #32.

39. Demhoff continues to own membership interest in The Greenhead Hunting Club, LLC. Each interest is worth $153,000.00.

**ANSWER:** Deny.

40. None of their personal dealings with Demhoff Corporation was reported in the bankruptcy filings.

**ANSWER:** Admit. Further answering, Debtors did not understand that their liability to a corporation that they owned needed to be listed in on Schedule F. They have now amended Schedule F to set forth their debt to Demhoff based upon successive loans.

41. Richard Dempsey failed to truthfully answer Number 18 of the Statement of Financial Affairs because the value of Demhoff Corporation is above $0.

**ANSWER:** Deny. See answer to question 38 above.

42. Richard Dempsey admitted at the 2004 Examination that he is the sole Manager of The Greenhead Hunting Club, LLC. Exhibit C, page 79.

**ANSWER:** Admit.

43. The fact that Richard Dempsey was the sole Manager of an entity that purchased $2,000,000.00 in real estate was not disclosed on the Statement of Financial Affairs.

**ANSWER:** Deny. Richard Dempsey was not the manager of Greenhead when the real estate

9

was purchased. Further, the purchase price was $1,850,000, not $2,000,000. He is not a member of Greenhead Hunting Club, LLC. As a manager, Richard Dempsey does not receive any equity or income.

44. Richard Dempsey represented that he is owed $1,225,000.00 from Chillicothe.

**ANSWER:** Deny.

45. The $1,225,000.00 owed by Chillicothe is in fact loans owed to George McCarthy's pension plan by Chillicothe, not Richard Dempsey.

**ANSWER:** Deny.

46. Richard Dempsey and Eileen Dempsey overstated their liabilities by $1,225,000.00.

**ANSWER:** Deny.

47. Richard Dempsey and Eileen Dempsey had knowledge that they received $750,000.00 in income from Demhoff Corporation and failed to disclose this information to this Court.

**ANSWER:** Deny.

48. Richard Dempsey and Eileen Dempsey had knowledge that there were assets transferred within two years of the bankruptcy filing and that they intended not to disclose these transfers to this Court.

**ANSWER:** Deny,

49. Richard Dempsey and Eileen Dempsey knew that Richard Dempsey was a Manager of The Greenhead Hunting Club, LLC and that Richard Dempsey overstated his liabilities.

**ANSWER:** Object to multiple allegations. Without waiving such objection, Debtors deny

10

that Richard Dempsey overstated his liabilities.

50. All of the transactions described in Paragraphs 6-46 were material because they bear a direct relationship to the bankrupts' business transactions and estate.

**ANSWER:** Deny.

51. Richard Dempsey and Eileen Dempsey engaged in a pattern of fraud and deceit to hide income, assets and other transactions that were material to this case.

**ANSWER:** Deny

52. Richard Dempsey and Eileen Dempsey grossly understated their income and assets, and overstated their liabilities in this case with full knowledge of theft conduct.

**ANSWER:** Deny

53. The schedules and pleadings filed by Richard Dempsey and Eileen Dempsey were made with a reckless disregard to the truth and were intentionally false.

**ANSWER:** Deny

54. Each of the Schedules, Statements and Disclosures contained in Debtors' Petition were verified under § 1008 of the Federal Rules of Bankruptcy Procedure.

**ANSWER:** Admit

55. 11 U.S.C. § 727(a)(2)(A) prohibits a discharge if a debtor concealed property within one year of the filing of the petition for bankruptcy.

**ANSWER:** This statement of law does not require admission or denial.

56. 11 U.S.C. § 727(a)(4)(A) prohibits a discharge is a debtor fraudulently and knowingly makes a false oath.

**ANSWER:** This statement of law does not require admission or denial.

57. 11 U.S.C. § 727(a)(4)(B) prohibits a discharge is a debtor presents a false claim.

**ANSWER:** This statement of law does not require admission or denial.

58. 11 U.S.C. § 727(a)(5) prohibits a discharge is a debtor fails to adequately explain the loss of assets or deficiency of assets to pay debts.

**ANSWER:** This statement of law does not require admission or denial.

*59.* Richard Dempsey and Eileen Dempsey violated 11 U.S.C. § 727(a)(2)(A) by concealing property and assets as above described.

**ANSWER:** Deny.

60. Richard Dempsey and Eileen Dempsey violated 11 U.S.C. § 727(a)(4)(A) by making false oaths as above described.

**ANSWER:** Deny

61. Richard Dempsey and Eileen Dempsey violated II U.S.C. § 727(a)(4)(B) by presenting false claims as above described.

**ANSWER:** Deny

62. Richard Dempsey and Eileen Dempsey violated 11 U.S.C. § 727(a)(5) by failing to explain the loss of assets or deficiency of assets to meet the Debtors' liabilities as above described.

**ANSWER:** Deny

**WHEREFORE**, Defendants respectfully request that this Honorable Court dismiss Count I, or in the alternative, enter judgment in their favor and against George McCarthy, granting Defendants such other and further relief as this Court deems proper.

## **COUNT II - 11 U.S.C. § 523(a)(l8)**

Regarding Count II, Defendants have filed a Motion to Dismiss, and therefore, do not at this time file any answer to Count II.

                                      Respectfully submitted,

                                      Richard and Eileen Dempsey
                                      By:
                                      /s/ Forrest L. Ingram
                                      One of their Attorneys

Forrest L. Ingram, #3129032
FORREST L. INGRAM, P.C.
79 W. Monroe, Ste 900
Chicago, IL 60603
(312) 759-2838