## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBRO FOODS, INC. | ) | Judge Eugene Wedoff |
| | ) | |
| Debtor and Debtor in Possession. | ) | Case No. 09-10101 |
| | ) | |
| | ) | Adversary No. 90 A 500 |

### G AND G PEPPERS, LLC'S POST-TRIAL BRIEF

In accordance with Court's direction, G and G Peppers, LLC, ("G & G") files this post-trial brief based upon the Record of the Trial held October 7, 2009:

### I. BACKGROUND

1. G & G filed its adversary claim on June 29, 2009. At Ebro's request, the Court extended the deadline for filing Ebro's Answer. Debtor Ebro filed its Answer on July 31, 2009.

2. At a hearing on August 4, 2009, the parties stipulated to the setting of a pretrial conference in anticipation of a quick trial on the merits of G & G's claim.

3. The Court issued its order setting the deadline for the parties to confer no later than August 14, 2009, file the joint pretrial statement no later than August 20, 2009 and set a pretrial conference for August 25, 2009.

4. Following the Court's hearing on August 25, 2009, the parties stipulated to the filing an expedited discovery period and set the matter for trial on October 7, 2009.

5. The Court held a trial on the matter on October 7, 2009. At the trial, Debtor Ebro Foods, Inc. ("Ebro") asserted, as its sole legal defense, that G&G had waived its PACA trust rights because there is a discrepancy between payment terms in the purchase orders, 30 days, and the PACA payment term contained in the invoices for the shipments giving rise to G&G's

claim. The Court finding that there were no factual disputes in the matter directed the parties to file post-trial brief addressing Ebro's legal defense.

6.     After a flurry of various arguments in its pre-trial filings, it was apparent at the hearing on October 7 that the sole defense upon which Ebro relies to avoid its liability to G & G under the PACA trust is based on the Ninth Circuit case *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.*, 958 F.2d 938 (9th Cir. 1992).   For the reasons described in this brief, *Bowlin* is inapplicable to the facts of this case because the parties did not enter into a payment agreement *prior to entering into their transaction.*

### II. ARGUMENT – NO PRE-TRANSACTION AGREEMENT, BOWLIN IS INAPPLICABLE TO THIS CASE

The decision in *Bowlin* revolves on the question of the court's interpretation of 7 U.S.C. § 499e(c)(3) and the related regulations.  Specifically, the Ninth Circuit held that in instances when the parties have entered into a payment agreement different from that established by the Secretary, the seller's invoices for the underlying transaction must reflect the different payment terms.  The parties in *Bowlin* entered into a credit agreement extending payment terms beyond the 10-days required by the Secretary in 7 C.F.R. § 46.2aa.  The seller's invoices however, did not reflect the payment terms of the parties' pre-existing credit agreement.  The 9th Circuit held that the seller had failed to properly preserve its PACA trust rights. *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.*, 958 F.2d 938 (9th Cir. 1992).  The reasoning of *Bowlin* was that the pre-transaction credit agreement was not reflected on the invoices related to the sales which took place resulting in loss of PACA trust rights under 7 U.S.C. § 499e(c)(3). *Bowlin* 958 F.2d at 939.

There is no Seventh Circuit case, either at the appellate level or in its constituent district or bankruptcy courts, in which *Bowlin* has been adopted. Nothing in 7 U.S.C. § 499e(c)(3) states that a variance between a payment period contained in a transaction document such as a purchase order and the payment period stated in an invoice for the same transaction will result in loss of PACA trust protection. Indeed in at least one case out the Bankruptcy Court in this District, Judge Coar reiterated that modification of payment terms beyond those prescribed under the PACA regulations must be made in a pre-transaction writing. *See* <u>In re Ande Foods, Inc.</u>, 110 B.R. 346, 352 (Bankr N.D. Ill 1989). The statute and regulations do not contain such a forfeiture provision. In fact, the *only* specific means stated in the statute or regulations by which a party may lose PACA trust is by an agreement to extend payment beyond 30 days[1] or an express waiver of the PACA trust which must be expressly contained in a separate document[2]. The Debtor has placed all of its hopes of avoiding its statutory and fiduciary obligations on this Court adopting <u>*Bowlin*</u> and appears to contend that the fact that the payment period on the parties transaction documents, the purchase order, is different than that on the invoices results in loss of trust protection. However, even if this Court should elect to be the first court of the constituent courts of the Seventh Circuit to adopt *Bowlin,* that decision is inapplicable to the facts of this case.

///

///

***Parties did not enter into an "agreement" <u>before</u> entering into the transaction***

---

[1] *See* 7 C.F.R. § 46.46e(2)
[2] *See* 7 C.F.R. § 46.46(c)(2)

3

The *Bowlin* decision is inapplicable to the facts in this matter as the parties did not enter into an "agreement" *before* entering into the transaction. Ebro's purchase orders relating to the shipments do not constitute an "agreement" *prior to entering into the transaction* as contemplated under the statute and regulations. Rather, the purchase orders and invoices <u>are</u> the "transaction" documents. A discrepancy in the payment terms reflected in a shipment's actual transaction documents does disqualify the seller from its eligibility for statutory trust rights. *See e.g.,* <u>In re Atlanta Egg & Produce, Inc.</u>, 321 B.R. 746 (N.D. Ga 2005).

While in a pure Article 2 context a document containing key terms signed by the parties constitutes a contract, as counsel for Plaintiff stated to the Court on October 7, PACA regulations do set a *different* standard for establishing an effective payment period in writing; the statute and the regulation impose an additional hurdle that is not contained in Article 2 of the UCC.

> 7 U.S.C. § 499e(c)(3) states in relevant part:
>
> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary [of Agriculture] within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, [or] (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing *before entering into the transaction*.... When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

[italics added]

The statute mandates that a payment agreement must be made *before entering into* the transaction. There are some provisions of the parties' transaction documents that are

4

incorporated into their agreement, such as attorney's fees under Article 2. *See* <u>Country Best v. Christopher Ranch, LLC</u>, 361 F.3d 629 (11th Cir. 2004). What cannot be changed so readily under PACA is the modification of the payment term, which for the PACA statute and regulations set additional barriers.

The PACA regulations adopted by the USDA are structured to ensure prompt payment to sellers of perishable agricultural commodities. Prompt payment and eligibility for trust benefits is set out in 7 C.F.R. 46.2(z) and (aa). As does the statute, these regulations provide that parties who elect to use different terms for payment must reduce their agreement in writing *before entering into the transaction*, for example by signing a credit agreement prior to sending purchase orders and maintain a copy of their agreement in their records, and the times for payment must be disclosed on invoices, accountings, and other documents relating to the transaction. 7 C.F.R. 46.2(aa)(11). When parties sign a purchase order they are *entering* into a transaction. By definition any payment period stated in the transaction documents to purchase produce (i.e., purchase order, invoices, etc.) is entered into *contemporaneously* with entering into a contract, rather than *prior* to entering into a contract.

The legislative history of these provisions of the statute relate to the common practice in the industry for parties to enter into the agreements whereby the sellers of perishable agricultural commodities agree to extend credit to their customers. *See* <u>In re Caito Produce Co</u>., 48 Agric. Dec. 602 (1989). However, the financial risk to the seller and its implications to the industry led Congress to amend the Perishable Agricultural Commodities Act [7 U.S.C. 499a *et seq*] ("PACA") in 1984 to include statutory trust rights to the sellers of perishable agricultural commodities. The trust regulations promulgated by the U.S. Department of Agriculture

("USDA") in response to the 1984 PACA amendment established rules for the length of credit agreements. The regulations further required that the enforceability of agreement to extend credit beyond the time it established must be in writing before the parties proceeded with the underlying transactions. *Id.* at 606-610. The rationale behind the writing requirement and the timing of the credit agreement was intended to address the inherent disadvantage a seller vis-à-vis the buyer of perishable agricultural commodities. *Id.* Allowing the buyer to assert payment terms after its receipt of the produce or to an informal agreement (e.g., course of dealing, oral agreement) would place sellers at a distinct disadvantage that Congress sought to address in the 1984 PACA amendments.

Thus, the "agreement" contemplated by the statute and the regulations was not a purchase order, or other transactional document relating to the specific shipment, but rather a credit agreement executed by the parties prior to the commencing the underlying transactions. The subsequent case law on the writing supports this interpretation of the statute and regulations. *See e.g., In re Lombardo Fruit and Produce Co.*, 12 F.3d 110, (8th Cir. 1993)(holding that undated letters did not constitute written agreement before transactions). Moreover, the language of the statute itself mandates that the "agreement" is separate from the "transaction" and must be entered into prior to the transaction. The statute provides that "any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and *other documents* relating to the transaction." (emphasis added) 7 U.S.C. § 499e(c)(3).

The provisions of the UCC also distinguish between and "agreement" and a "contract". UCC 1-201(3) defines "agreement" to mean the "bargain of the parties in fact as found in their

language or by implication from other circumstances including course of dealing or usage of trade or course of performance…" UCC 1-201(11) defines "contract" to mean the "total legal obligation by which results from the parties' agreement as affected by the Act and any other applicable rules of law."

Here, the purchase orders, invoices and bills of lading are all transactions documents of the same "contract" to buy/sell each shipment. That is, G&G was under no further obligation to sell and Ebro was under no additional obligation to buy other than shipments described in the transaction documents. Most significantly, there was no express written credit agreement regarding the payment terms prior to the parties' transactions giving rise to this action.

*Payment terms qualify for PACA trust rights*

Ironically, Ebro's position would seek to hold G&G ineligible for PACA trust rights notwithstanding the fact that the conflicting transaction documents would both qualify for PACA trust rights. Ebro's purchase order state payment terms of "net 30 days".[3] G&G's invoices state "PACA terms". PACA terms is a common industry term referring to USDA's standard prompt payment terms described in 7 C.F.R. § 46.2(aa), which in this instance generally means 10 days from the buyer's receipt. There is nothing in the record indicating that Ebro objected to payment terms asserted in G&G's invoices. Although it is conceivable that the conflicting terms may have led the parties' dispute over exactly when Ebro's payment was due (i.e., 10 days versus 30 days), it would seem contrary to the intent of the PACA statute that Ebro - 2 years after its undisputed receipt of the shipments; having ignored the administrative proceedings

---

[3] 7 C.F.R. § 46.46e(2) provides that the maximum that that the parties can agree and still qualify for trust coverage is

7

before the USDA; disregarded the reparation award in favor of G&G; and now in an adversary bankruptcy proceeding before the Court -- claim that a 20-day discrepancy in the transaction documents is sufficient to disqualify G&G of its statutory trust rights.  See Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir.1991)(holding that Congress intended PACA to protect farmers and growers who were vulnerable to the practices of financially irresponsible buyers).

The Plaintiff was entitled to rely upon the provisions of the PACA trust statute and the regulations which prevent the creation of modified payment terms *except* through a pre-transaction agreement.  Ebro's attempt to assert payment terms varying from those set out in the PACA regulations through the transaction documents is precisely the conduct which the 1984 PACA amendment and regulations sought to prohibit.

### III. Attorney's Fees – Recoverable under PACA and Terms of Invoice

G&G holds an unpaid reparations award issued by the USDA in the amount of $43,920.00 plus $300 in costs, with interest accruing at the rate of 2.3% per annum and it is enforcing this award through this proceeding.   A certified copy of the award was presented with the uncontested exhibits presented to the court as Exhibit G&G-007.  The 7th Circuit has unequivocally held in favor of allowing the recovery of attorneys' fees and costs in claims seeking enforcement of PACA trust rights.  See Robinson Farms Co. v. D'Acquisto, 962 F.2d 680 (7th Cir. 1992)(holding that recovery attorney's fees is "automatic" in cases enforcement of reparation awards); Strube Celery & Vegetable Co. v. Global Foods, LLC, 2007 WL 5395648(awarding attorney's fees in claim enforcing PACA trust rights).

---

30 days.

There is a second basis for the attorney's fee claim. G&G's invoices, included in Exhibit G&G-006, also contain language that entitles G & G to recover reasonable attorney's fees. *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629 (11th Cir. 2004)(holding that attorney's fees are recoverable under PACA statute). There is no record that Ebro objected to the inclusion of the payment of attorney's and interest on the sales invoices. In such circumstances, courts have granted attorney's fees. *Brutyn, N.V. v. Anthony Gagliano Co. Inc*. 2007 WL 1959178 (not rept'd)(holding that attorney's fees are recoverable when included in seller's invoices).

## IV. CONCLUSION

Ebro seeks to avoid its liability to G & G under the PACA trust based on the Ninth Circuit case *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc*. The holding in *Bowlin* has not been adopted by the Seventh Circuit or any of its constituent courts. Moreover, *Bowlin* is inapplicable to facts in this case as the parties' did not enter into a written agreement to set payment terms varying from the terms set by USDA pursuant to the PACA *prior to* the parties' transactions. The purchase order, invoices and bills of lading produced are the transaction documents associated with the shipments and therefore cannot constitute a written agreement setting payment terms *prior to* the underlying transactions as contemplated under the PACA statute. Ebro's attempt to assert that the payment terms in the transaction documents varying from those required under the PACA is precisely the conduct that PACA seeks to prohibit. Moreover, Ebro's assertion that a minor discrepancy in the transaction documents should relieve it of its fiduciary duties, two years after it undisputedly received the product is contrary to the intent of the PACA statue.

Wherefore, for the above-stated reasons, G&G requests that the Court grant it a judgment in its favor in the amount of $43,920.00, plus costs, interest, and attorney's fees.  G&G further requests that the Court authorize and direct Ebro to turnover funds sufficient to satisfy said judgment to G&G.

Dated: October _____, 2009.

                Respectfully submitted,

                G AND G PEPPERS, LLC

                By: /s/ Craig A. Stokes_____
                    Craig A. Stokes (#0122572)
                    STOKES LAW OFFICE LLP
                    3330 Oakwell Court, Suite 225
                    San Antonio, TX 78218
                    Telephone (210) 804-0011
                    Facsimile (210) 822-2595
                    E-Mail cstokes@stokeslawoffice.com

                And

                Mary E. Gardner (#6190951)
                Mary E. Gardner, P.C.
                P.O. Box 330
                West Dundee, IL 60118
                Telephone (847) 804-7222

## **CERTIFICATE OF SERVICE**

     I, Craig A. Stokes, counsel for G and G Peppers LLC, certify that I caused a copy of the foregoing document to be served on the parties in interest that are listed on the below Service List through the Court's ECF System on this the _____ day of October, 2009.

                                                               /s/ Craig A. Stokes_____
                                                               Craig A. Stokes

## **SERVICE LIST**

Forrest L Ingram
Helena Milman
Forrest L. Ingram, P.C.
79 W Monroe Street, Suite 900
Chicago, IL 60603

William T Neary
Office of the U.S. Trustee, Region 11
219 S Dearborn St., Room 873
Chicago, IL 60604